UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| BRYAN K. KUYKENDOLL, | ) |
| | ) |
| PLAINTIFF | ) |
| | ) |
| VS. | ) CAUSE NO. 3:17-CV-766 RLM-MGG |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| DEFENDANT | ) |

OPINION AND ORDER

Bryan K. Kuykendoll seeks judicial review of a final decision by the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income under Title II of the Social Security Act, 42 U.S.C. §§ 423 and 1382 *et seq*. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g). For the reasons that follow, court denies Mr. Kuykendoll's request to reverse the Administrative Law Judge's decision or remand this action for further proceedings, and affirms the ALJ's denial of benefits.

I. BACKGROUND

Mr. Kuykendoll alleged that his disability began on March 1, 2011. Mr. Kuykendoll's 2014 applications for disability insurance benefits and supplemental security income were denied in February 2017. Before this case, Mr. Kuykendoll had filed applications for disability insurance benefits and

supplemental security income in 2003, 2010, 2012, and 2013. These applications were denied and Mr. Kuykendoll didn't appeal those decisions.

At the 2017 hearing on these applications, the ALJ concluded that Mr. Kuykendoll had numerous severe and non-severe impairments. The severe impairments were degenerative disk disease; left shoulder/rotator cuff status post-arthroscopic surgery and rotator cuff repair; anxiety; and depression. The non-severe impairments were mild sleep apnea; Hepatitis C; benign prostatic hypertrophy ("BPH/enlarged prostate"); chronic obstructive pulmonary disease ("COPD"), asthma, and bronchitis; carpal tunnel-like syndrome; left hip pain; a mild heart murmur; and podiatry issues. The ALJ concluded that Mr. Kuykendoll's impairments weren't severe enough, either singularly or in combination, to meet or medically equal any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App'x 1. The ALJ considered listings 1.02A (major dysfunction of a joint), 1.04 (disorders of the spine), and 12.06 (anxiety-related disorders) in his decision.

The ALJ determined that Mr. Kuykendoll was mildly restricted in his daily living. He could perform fine and gross shoulder movements and had a normal gait and station, but couldn't engage in sustained lifting, reaching, pushing, kneeling, or crouching. The ALJ also determined that Mr. Kuykendoll was mildly restricted in his social functioning and that his impairments created moderate difficulties with concentration, persistence, and pace. Mr. Kuykendoll lived with his mother. He attended church occasionally and saw friends irregularly. He

struggled with group interaction but appeared to fare well in one-on-one scenarios. He could cooperate with others, follow directions, and foster romantic relationships. He handled his own medical care and that of his mother, although he sometimes struggled to recall detailed medical history. Mental health providers at Oaklawn Psychiatric Center determined that his attention and concentration were within the normal limits.

The ALJ found that Mr. Kuykendoll had the residual functional capacity to perform unskilled, light exertional work with a number of limitations. These included limitations on lifting, carrying, pushing, reaching, climbing, and kneeling. The ALJ further found that Mr. Kuykendoll was capable of work involving interaction with superiors and the general public and that he could also perform other work that existed in significant numbers in the national economy.

The ALJ concluded that Mr. Kuykendoll wasn't disabled within the meaning of the Social Security Act and so wasn't entitled to disability benefits.

## II. STANDARD OF REVIEW

The issue before the court isn't whether Mr. Kuykendoll is disabled, but whether substantial evidence supports the ALJ's decision that he wasn't disabled. Scott v. Astrue, 647 F.3d 734, 739 (7th Cir. 2011); Nelms v. Astrue, 553 F.3d 1093, 1097 (7th Cir. 2009). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). In reviewing the ALJ's decision, the court can't reweigh the evidence, make independent findings of fact, decide credibility, or substitute its own judgment for that of the Commissioner, Simila v. Astrue, 573 F.3d 503, 513 (7th Cir. 2009); Powers v. Apfel, 207 F.3d 431, 434–435 (7th Cir. 2000), but instead must conduct "a critical review of the evidence, considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision." Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005). While the ALJ isn't required "to address every piece of evidence or testimony presented, he must provide a 'logical bridge' between the evidence and the conclusions so that [the court] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). ALJs must "sufficiently articulate their assessment of the evidence to assure [the court] that they considered the important evidence and to enable [the court] to trace the path of their reasoning." Scott v. Barnhart, 297 F.3d 589, 595 (7th Cir. 2002) (internal quotations omitted).

## III. DISCUSSION

Mr. Kuykendoll believes the ALJ made several errors requiring remand: 1) that the ALJ erred in not including all relevant limitations in his Residual Functional Capacity determination; 2) that the ALJ erred in not giving a treating

4

physician's opinion controlling weight; and 3) that the ALJ's erred in improperly overemphasizing Mr. Kuykendoll's ability to complete daily activities. Mr. Kuykendoll asks the court to either reverse the Commissioner's decision and award benefits or remand the case for further proceedings.

### A. *The Inclusion of All Relevant Limitations*

Mr. Kuykendoll says the ALJ didn't properly include all his relevant limitations in the determination of his residual functional capacity. The ALJ must include all relevant evidence in the residual functional capacity determination. 20 C.F.R. § 404.1545(a). The Commissioner responds that the limitations were properly considered.

Mr. Kuykendoll argues that the ALJ didn't consider his pulmonary ailments and his tendonitis. An ALJ must consider all medical evidence on the record, even non-severe evidence. Varga v. Colvin, 794 F.3d 809 (7th Cir. 2015). The ALJ considered both limitations. The ALJ didn't directly mention Mr. Kuykendoll's pulmonary ailments, the ALJ did cite his proper use of his C-pap machine (used for COPD and sleep apnea) and ability for home exercise. The ALJ didn't specifically mention Mr. Kuykendoll's use of a walking cane, but determined that he could exercise, complete household tasks, shop at stores, and that he had a normal gait. The ALJ directly considered those conditions in deciding that Mr. Kuykendoll could engage in unskilled work.

Mr. Kuykendoll also says the ALJ ignored certain concentration,

persistence, and pace limitations. An ALJ must consider such limitations. Craft v. Astrue, 539 F.3d 668, 676 (7th Cir. 2008); SSR 96-8p (the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"). Much of Mr. Kuykendoll's argument essentially attempts to relitigate the ALJ findings, characterizing the various limitations as more severe than the ALJ determined. This court isn't in a position to reweigh such evidence. Simila v. Astrue, 573 F.3d 503, 513 (7th Cir. 2009); Powers v. Apfel, 207 F.3d 431, 434–35 (7th Cir. 2000). The ALJ considered Mr. Kuykendoll's concentration, persistence, and pace limitations in detail. The ALJ considered psychiatric assessments as well as an extensive review of Mr. Kuykendoll's ability to complete daily activities.

Mr. Kuykendoll argues that these findings don't support a proper concentration, persistence, and pace determination under the standard set forth in Yurt v. Colvin, 758 F.3d 850 (7th Cir. 2014); see also DeCamp v. Berryhill, 2019 U.S. App. LEXIS 5587 (7th Cir. 2019); Paul v. Berryhill, 2019 U.S. App. LEXIS 4608, __ Fed. Appx. __, 2019 WL 643261 (7th Cir. 2019); Winsted v. Berryhill, 915 F.3d 466 (7th Cir. 2019). Yurt and its progeny involved a lack of discussion on a plaintiffs' concentration, persistence, and pace. In these cases, the ALJs disregarded specific testimony and documentary evidence on the plaintiffs' concentration, persistence, and pace limitations. These cases also centered on a discussion of the inadequacy of various hypotheticals the ALJs used in their RFC determinations because the hypotheticals lacked a proper

6

logical connection to the plaintiffs' concentration, persistence, and pace.

The ALJ discussed Mr. Kuykendoll's concentration, persistence, and pace thoroughly and there is no indication that the ALJ engaged in inadequate hypotheticals. The vocational expert determined that Mr. Kuykendoll could complete unskilled work that required "little or no judgment." 20 C.F.R. 404.1568(a); 416.968(a). The record shows that the ALJ's conclusion was absent of attenuated hypotheticals and grounded in the thorough analysis of plaintiff's concentration, persistence, and pace.

It was further asserted during oral argument that <u>Yurt</u> stood for the proposition that a finding of a severe impairment must mean that a plaintiff was severely limited in concentration, persistence, and pace. The court understands the standard differently. An impairment's severity acts as a requirement for further analysis – any impairment found not be slight or "not severe" results in a claim denial. 20 C.F.R. § 404.1520(c), 416.920(c). If an impairment is deemed severe, it is first evaluated to determine whether, on medical evidence alone, the impairment precludes any work function. 20 C.F.R. Pt. 404, Subpt. P, App'x 1. If not, the impairment is evaluated based on the limitation it sets on plaintiff's ability to work. 20 C.F.R. § 404.1520(f), 416.920(f). This determination considers a wide variety of factors including age, education, work history, and social interaction. 20 C.F.R. § 404.1520(e), 416.920(e). The ALJ's determination that Mr. Kuykendoll had a number of severe impairments does not necessarily mean that he must also find that Mr. Kuykendoll had severe limitations.

## B. Dr. Platt's Medical Opinion

Mr. Kuykendoll alleges that the ALJ didn't give appropriate weight to the medical opinion of his treating physician, Dr. Platt. If a treating physician's opinion is "well-supported" and "not inconsistent" with other evidence on the record it should be afforded controlling weight. Puzio v. Astrue, 630 F.3d 704, 710 (7th Cir. 2011). If a treating physician's opinion is to be discounted, the ALJ must describe the reasons for the discount. Martinez v. Astrue, 630 F.3d 693, 698 (7th Cir. 2011).

The ALJ considered Dr. Platt's medical opinion as it pertained to Mr. Kuykendoll, devoting three full paragraphs to Dr. Platt's diagnoses of depression and anxiety. This analysis also included a consideration of Mr. Kuykendoll's improvement in those conditions. Other physicians in the record reported the improved conditions. The ALJ thought much of Dr. Platt's opinion on Mr. Kuykendoll's ability to perform work was speculative. The ALJ discussed this and concluded such speculated conclusions were worth little weight, finding that Dr. Platt's determinations of depression and anxiety weren't supported by evidence in the record while the determination that Mr. Kuykendoll's ability to follow simple tasks was supported by evidence An ALJ is "not required to rely entirely on a particular physician's opinion" if the opinion is inconsistent with the evidence in the record. Schmidt v. Astrue, 496 F.3d 833, 845 (7th Cir. 2007); Diaz v. Chater, 55 F.3d 300, 306 at n.6 (7th Cir. 1995).

### *C. Overemphasizing Mr. Kuykendoll's Abilities*

Mr. Kuykendoll alleges that the ALJ improperly overemphasized his ability to complete daily tasks in its analysis of his residual functional capacity. As stated before, this court is limited in what it can review. Skarbek v. Barnhart, 390 F.3d 500, 505 (7th Cir. 2004) (determinations made by the ALJ cannot be overturned unless "patently wrong."). For Mr. Kuykendoll's claim to be correct, the ALJ must have given his daily activity abilities so much weight as to render his residual functional capacity "patently wrong" in light of the evidence. Skarbek v. Barnhart, 390 F.3d at 505.

Looking towards "daily activity" ability to the exclusion of other factors is improper. Bjornson v. Astrue, 671 F.3d 640, 674 (7th Cir. 2012); Beardsley v. Colvin, 758 F.3d 834 (7th Cir. 2014). Had the ALJ looked exclusively at Mr. Kuykendoll's daily activity ability when determining his residual functional capacity, remand would be required. But the ALJ focused on a number of factors in its RFC determination: Mr. Kuykendoll's mental and physical impairments, medications that help with the impairments, surgeries, daily activities, and ability to perform work functions. The ALJ came to the RFC determination by considering all of these factors and didn't overemphasize one to the exclusion of others.

IV. Conclusion

For these reasons, the court AFFIRMS the Commissioner's decision. The Clerk shall enter judgment accordingly.

SO ORDERED.

ENTERED:   March 28, 2019


/s/ Robert L. Miller, Jr.
Judge, United States District Court